## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20250-CV-SCOLA/TORRES

DEVORIS MORGAN,

        Plaintiff,

v.

ANDREW SAUL, Commissioner
Of Social Security[1]

        Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## <u>CROSS MOTIONS FOR SUMMARY JUDGMENT</u>

Two Motions are currently pending before this Court: (1) a Motion for Summary Judgment filed by Plaintiff DEVORIS MORGAN ("Morgan" or "Plaintiff") on June 27, 2019 [D.E. 26]; and (2) a Motion for Summary Judgment filed by ANDREW SAUL, the COMMISSIONER OF SOCIAL SECURITY (the "Commissioner" or "Defendant") on August 2, 2019. [D.E. 27]. All dispositive matters were referred to the undersigned on January 22, 2018 [D.E. 2], and both Motions are now fully-briefed and ripe for disposition. After reviewing the evidence of record, the arguments set forth in each party's briefing materials, and the governing legal

---

[1]    Plaintiff mistakenly named Nancy Berryhill as the acting Commissioner of Social Security. The President nominated Andrew Saul as Commissioner and the United States Senate confirmed him in this role on June 4, 2019. His name will therefore be substituted in the caption. *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.

authorities on the matters at hand, we hereby **RECOMMEND** that Plaintiff's Motion be **DENIED**, the Commissioner's Motion be **GRANTED**, and the decision of the Administrative Law Judge be **AFFIRMED**.

## I.    *STANDARD OF REVIEW*

The Social Security Act gives federal courts the power to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to the following determinations: (1) whether the findings are supported by substantial evidence contained in the record; and (2) whether the Commissioner applied the correct legal standards. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

We must affirm if we determine the Commissioner's decision is supported by substantial evidence. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). Substantial evidence is "more than a scintilla, but less than a preponderance," and comprises "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. This is a deferential standard, and we cannot decide the facts anew, re-weigh the evidence, or substitute our own judgment for that of the Commissioner. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) ("Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence."); *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).

Unlike the factual determinations made during the administrative proceedings, no presumption of validity attaches to the Commissioner's legal conclusions. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). We must reverse if the court finds the Commissioner erred in applying the law, or if the administrative law judge fails to provide the court with sufficient explanation to allow us to determine whether the proper legal analysis has been conducted. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## II.   BACKGROUND

Plaintiff, who is 33 years old at the time of this Report, was diagnosed with human immunodeficiency virus ("HIV") in 2004. He initially applied for supplemental social security income on February 14, 2013, alleging he suffered certain mental impairments and complications arising from the HIV infection, with an onset date of July 29, 2011. [R. at 559]. The Commissioner denied Morgan's application, determining his condition was not so severe that he could not work, *id*. at 441, and Morgan timely sought reconsideration of that decision on April 16, 2013. *Id*. at 487. The Commissioner once again denied Morgan's disability application in a letter dated May 31, 2013, and he appealed this decision on July 12 of that year, asking that his case be heard by an Administrative Law Judge. *Id*. at 488, 494.

### A.   *Hearing Before the ALJ*

The hearing took place on June 29, 2016 before ALJ Lornette Reynolds. [R. at 341]. Three individuals testified: Plaintiff; Dr. Si Numagotta; and Brenda Martinez, a vocational expert. *Id*. Plaintiff's counsel also appeared before the ALJ.

At the time of the hearing, Plaintiff had recently undergone gynecomastia surgery. *Id*. at 347. He discussed various issues related to his HIV diagnosis, including difficulty sleeping, nightmares, and social anxiety. *Id*. at 351. He currently takes antiretroviral medication – and has done so since 2009 – but testified it causes unpleasant side effects. *Id*. at 352. In particular, Morgan stated that his medications cause him to suffer from at least seven episodes of diarrhea per day. *Id*. at 352. As a result of those symptoms, he avoids certain social situations such as eating at new restaurants and spending time "at certain places for long periods of time." *Id*. at 352-53.[2] Plaintiff has dealt with other physical issues following his diagnosis, including shingles, polyps, syphilis of the skin, herpes simplex, and human papillomavirus. *Id*. at 354-55.

In addition to physical ailments, Plaintiff also discussed his mental condition, telling the ALJ that his depression has caused him to lose interest in most activities. *Id*. at 355. He has suicidal thoughts and testified that he thinks about harming himself "every day of the week." *Id*. at 357. He told the ALJ he only gets two hours of sleep per night. *Id*. at 356. Plaintiff claimed that his mental condition prevents him from concentrating fully on tasks and cited an inability to focus. *Id*. at 363. He also discussed "memory difficulties" which purportedly limits his ability to work. *Id*.

Plaintiff described his past work experience. He admitted he has not sought employment since 2007, when he worked for the Cleveland Clinic Foundation as a

---

[2]     Despite this social discomfort, Plaintiff testified that his friends often assist him with paying his medical bills and will occasionally drive him to doctor's appointments.

patient/care technician in the operating room. *Id.* at 348. Previously he had worked for Winn Dixie as a "pallet jack driver" part-time, and in this role he also assisted other employees at the warehouse carrying boxes and unloading trucks. *Id.* at 348-49. He also worked as a door-to-door salesman for a company called Breckenridge Enterprises in 2005. *Id.* at 349.

ALJ Reynolds turned her questions to Dr. Numagotta, the medical expert retained to opine in the matter. *Id.* at 369. Dr. Numagotta testified that Plaintiff did not meet any of the "listed impairments" set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1, either for his HIV or the alleged mental impairments. The doctor also discussed Plaintiff's functional limitations, finding that he should be able to lift 20 pounds or more occasionally, could frequently lift 10 pounds, and sit, stand or walk six hours out of an eight-hour workday. *Id.* at 371. The doctor testified that Plaintiff should not work in positions that require him to operate hazardous machinery, and that any potential position should avoid potential contact exposure with customers and other employees. *Id.*

Vocational expert Brenda Martinez testified as to Plaintiff's potential job prospects in light of his claimed limitations. She classified his previous work experience as (1) material handler, Dictionary of Occupational Titles ("DOT") No. 929.687-010, a medium-exertion position with a Specific Vocational Preparation ("SVP") level of 4; and (2) kitchen helper, DOT No. 318.687-010, a light-exertion position with an SVP level of 2. *Id.* at 386. The ALJ questioned the vocational expert on whether Plaintiff could perform any work in light of his medical conditions and

certain limitations, and the VE answered that Plaintiff could obtain employment in the following positions: (1) marker, DOT No. 209.587-034, a light-exertion position requiring an SVP level of 2, with 291,000 jobs available in the national economy; (2) checker, DOT No. 222.687-010, a light-exertion position requiring an SVP level of 2, with 24,000 jobs available in the national economy; and (3) router, a light-exertion position requiring an SVP level of 2, with approximately 41,000 jobs available in the national economy. *Id*. at 390.

On cross-examination, the VE testified that a hypothetical claimant who could only focus for one-third of a standard workday would not be able to retain employment in any of those positions. *Id*. at 392. The VE also stated that the need to take bathroom breaks in the frequency Plaintiff claims he requires throughout the day would render him unemployable.

### B.    *ALJ Decision and Appeals Council Action*

ALJ Reynolds issued her decision on August 9, 2016. [R. at 460]. In doing so, she applied the sequential evaluation process that must be used in these types of claims. *See* 20 C.F.R. § 404.1520(a)(4). The process requires the ALJ to consider, in sequence, whether a claimant: (1) is working; (2) suffers from a "severe" impairment as defined by the regulations; (3) has a condition that meets or medically equals those found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (a "listed impairment"); (4) can return to past relevant work; and (5) if not, whether he can perform other work as it exists in the national economy.[3]

---

[3]    If, at step four, a claimant establishes that an impairment prevents him from performing past relevant work, the burden shifts to the Commissioner to show that

At steps one and two, ALJ Reynolds determined Plaintiff had not engaged in substantial gainful activity since February 14, 2013 – the date of his application – and suffered from the following severe impairments: (1) human immunodeficiency virus ("HIV"); (2) major depressive disorder; and (3) dysthymic disorder. *Id*. at 462. She then analyzed Plaintiff's conditions and found that each did not meet or medically equal the "listed impairments" because Plaintiff did not have "marked" restrictions in his activities of daily living, social functioning, and concentration as a result of those conditions. *Id*. at 463. She also found no evidence that Plaintiff had experienced episodes of decompensation. *Id*.

Before moving to step four, the ALJ analyzed Plaintiff's residual functional capacity ("RFC"), finding Morgan retained the ability to

> perform light work as defined in 20 C.F.R. § 416.967(b)[.] … The claimant can stand and/or walk, with normal breaks, 6 hours in an 8-hour workday. The claimant can sit, with normal breaks, 6 hours in an 8-hour workday. The claimant can occasionally climb ramps and stairs, but not ladders, ropes or scaffolds. He can frequently balance, kneel, crouch, stoop and crawl. He has no established manipulative, visual, or communicative limitations. Environmentally, he should not work at unprotected heights or with moving mechanical parts. He can engage in no work with sharp objects, or jobs involving food preparation, and he is limited to jobs that can be performed with incontinent protection. Mentally, he can understand, remember, and carry out short, simple instructions. He is able to sustain attention and concentration for two-hour periods at a time and for eight hours in the workday[.] He can use judgment in making work decisions related to short, simple instructions. He requires an occupation with only occasional[ ] coworker contact and minimal supervision. He requires a set routine and procedures, and few changes during the workday. He can engage in work that does not

other jobs exist in the national economy which, given the claimant's limitations, he or she can still perform despite the alleged medical condition. *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then rebut the finding and show that he cannot perform the work suggested by the Commissioner. *Id*.

require frequent, recurrent contact with the general public. He can respond appropriately to work pressures in a usual unskilled work setting. He can maintain regular attendance and be punctual within customary tolerances. He can perform activities within a schedule.

*Id.* at 464. The ALJ, considering this RFC, then determined Plaintiff could not return to past relevant work, but could obtain employment in the positions discussed by the VE at the hearing – marker, checker, and router. *Id.* at 469-71. Accordingly, and because Morgan could obtain employment in other positions despite his conditions, ALJ Reynolds found that Plaintiff did not qualify for disability benefits. *Id.* at 471-72.

Plaintiff appealed the ALJ's decision and provided additional medical documentation he claimed supported his request for disability benefits. The Appeals Council denied Morgan's request for review on July 26, 2017, telling him that "the Administrative Law Judge's decision is the final decision of the [Social Security Administration] in [this] case." *Id.* at 6. Morgan then sought and obtained an extension of time to file a civil action from the Administration, and he subsequently initiated this action on January 22, 2018. [D.E. 1].

### III.   *ANALYSIS*

Plaintiff makes five separate arguments to support his request to remand this case to the Commissioner. First, he claims that the Appeals Council committed legal error when it failed to evaluate Morgan's impairments under the new listings. [D.E. 26, p. 7]. Next, Plaintiff argues the Appeals Council committed a second legal error when it refused to consider new, material evidence that purportedly supports Plaintiff's claimed disabilities. *Id.* at p. 12. For his third and fourth arguments,

Plaintiff attacks the decision of the ALJ in her determination as to the weight given treating medical providers, *id*. at 13, and her finding that Plaintiff did not meet or medically equal the listed impairments in effect at the time of her decision. *Id*. at 19. Finally, Morgan contends that the hypothetical question posed to the VE at the hearing cannot be supported by the substantial evidence. *Id*. at 24.

We will address each of these arguments in turn.

### A.   *Whether the ALJ Needed to Evaluate Plaintiff's Condition Under the New Listings*

Plaintiff first challenges the Appeals Council's decision not to consider his condition under the new, revised criteria for assessing whether a claimant's condition meets or medically equals the listed impairments. According to Morgan's argument, if the new criteria may arguably be more favorable to a claimant, remand is necessary to evaluate whether a claimant's condition qualifies under that new criteria.

Morgan is correct that the Social Security Administration revised the criteria found within the Listings on September 26, 2016 for claims involving mental disorders in adults and children. *See* 81 Fed Reg. 66138-01, 2016 WL 5341732, at *66138 (Sept. 26, 2016). The Administration likewise revised the criteria for evaluating those claimants alleging HIV infection under the listed impairments, doing so on December 2, 2016. 81 Fed. Reg. 86915-01, 2016 WL 7013724, at *86915 (Dec. 2, 2016). Both rules became effective on January 17, 2017, with all prior rules remaining in effect until that date. *Id*. ("Even though this rule will not go into effect until January 17, 2017, for clarity, we refer to it in this preamble as the 'final' rule."); 2016 WL 5341732 at *66138 ("These rules are effective January 17, 2017.").

When an ALJ denies benefits and the Appeals Council denies review, the ALJ's decision is deemed the Commissioner's "final decision." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *see also Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008) ("When the Appeals Council denied review, the second ALJ's decision became the final decision of the Social Security Commissioner."); *Gonzalez-Ayala v. Secretary of Health and Human Servs.*, 807 F.2d 255, 256 (1st Cir. 1986). And the regulations make clear that the "new" listings at issue here – listings 12.04 and 14.11 – only apply to claims "that are pending on or after the effective date" of January 17, 2017. 2016 WL 5341732, at *66138 (for mental impairments); 2016 WL 7013724, at *86922 (for HIV claims).

Here, the Appeals Council denied Morgan's request for review on January 26, 2017, rendering the ALJ's August 9, 2016 decision as the "final decision" of the Commissioner. [R. at 6]. This "final decision" therefore occurred roughly five months before the new criteria came into effect. As such, the Commissioner correctly evaluated Plaintiff's claims under the old listings, and we find no legal error in her decision to do so.

**B.    *Whether the Appeals Council Ignored New and Material Evidence***

For his second argument, Morgan urges us to find that the Appeals Council committed legal error by ignoring "new and material evidence" when it denied review of Morgan's claim. [D.E. 26, p. 12]. In that denial, the Appeals Council notified Plaintiff of the following:

**We Have Denied Your Request for Review**

> We found no reason under our rules to review the Administrative Law Judge's decision. Therefore, we have denied your request for review.
>
> This means that the Administrative Law Judge's decision is the final decision of the Commissioner of Social Security in your case.
>
> …
>
> **Additional Evidence**
>
> You submitted the Medical Records from Jackson Health System dated January 10, 2017 to April 4, 2017 (320 pages). The Administrative Law Judge decided your case through August 9, 2016. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before August 9, 2016.
>
> If you want us to consider whether you were disabled after August 9, 2016, you need to apply again. If you file a new claim for supplemental social security income within 60 days after you receive this letter, we can use October 3, 2016, the date of your request for review, as the date of your new claim. The date you file a new claim can make a difference in the amount of benefits we can pay.

[R. at 6-7]. Morgan now argues that the decision to "ignore" the new evidence constitutes "perfunctory adherence" to the ALJ's decision, which would be legally improper and requires remand. *See Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir. 1984).

We disagree. A claimant may present new evidence at each stage of the administrative process, including to the Appeals Council, if the evidence is new, material, and relates to the period on or before the date of the ALJ's decision. *Sorter v. Social Sec. Admin., Comm'r*, 773 F. App'x 1070, 1072 (11th Cir. 2019) (citing 20 C.F.R. §§ 404.970, 416.1470; *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1261 (11th Cir. 2007)). "And although the Appeals Council has discretion to deny

review of an ALJ's decision, it must consider 'new, material and chronologically relevant' evidence when deciding whether to grant a claimant's request for review." *Id.* (citing *Washington v. Comm'r of Soc. Sec. Admin.*, 806 F.3d 1317, 1320 (11th Cir. 2015)).

Evidence is "chronologically relevant" if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b); *McGriff v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 469, 472 (11th Cir. 2016). The evidence here is not chronologically relevant. As the Appeals Council points out in its letter denying Morgan's claim, the medical records at issue involve treatment rendered five months *after* the ALJ issued her decision.[4] The evidence "did not relate to the period on or before the date of the ALJ hearing decision," and so the Appeals Council "did not err in refusing to consider it." *Sorter*, 773 F. App'x at 1072; *cf. Washington*, 806 F.3d at 1322 (opinions contained in medical records for examination occurring seven months after ALJ's decision were chronologically relevant because post-decision treatment related to and discussed medical records pre-dating ALJ's decision).

The fact that medical treatment occurred after the ALJ's decision does not, in and of itself, render the evidence chronologically irrelevant. *See Boyd v. Heckler*, 704

---

[4]     Although Plaintiff discussed the "new" evidence in his briefing materials as it relates to his HIV condition, in support of this argument he cited to a record from June of 2016 that deals entirely with his mental impairments. [R. at 2221-2226]. We assume this was error, as he makes no argument that the ALJ failed to address the 2016 opinion and does not take issue with the Appeals Council's reference of the "new" evidence being related to treatment at Jackson Memorial Hospital that took place in 2017.

F.2d 1207, 1211 (11th Cir. 1983) ("[A] treating physician's opinion is still entitled to significant weight notwithstanding that he did not treat the claimant until after the relevant determination date.") (citation omitted). But the records here are not of the same character as those cases where the Appeals Council's decision to "ignore" new medical evidence constituted reversible error, even though those records pre-dated the Commissioner's decision. For example, the records from Jackson Memorial Hospital do not discuss findings related to Morgan's earlier records and treatment, as was the case in *Washington*. *See* 806 F.3d at 1322. The new evidence here instead merely shows that Morgan continued to receive treatment after the ALJ denied his request for disability and that his complaints continued to remain consistent to those confronted by the ALJ in his disability request. *Ring v. Soc. Sec. Admin., Comm'r*, 728 F. App'x 966, 969 (11th Cir. 2018) (evidence not chronologically relevant because "evaluation did not discuss [ ] findings in relation to [claimant's] earlier medical records and treatment[.]").

This being the case, we are unable to find the Appeals Council erred in refusing to evaluate Plaintiff's condition once again, despite him including new medical records in his request for appellate review of the ALJ's decision. We are therefore unable to find legal error on this basis and the Motion should be denied on these grounds.

### C.   *Whether the ALJ Failed to Give Proper Weight to Medical Opinions*

For his third argument, Morgan contends that the ALJ failed to accord proper weight to certain medical opinions found within the record. Specifically, Plaintiff

contends that the ALJ failed to treat opinions offered by the following five physicians with "substantial" weight as the law requires: (1) Dr. Jose Castro; (2) Dr. Lourdes Illa-Sanchez; (3) Dr. Vicki-Ann Samuel; (4) Dr. Regina Carney; and (5) Dr. Leidybeth Rodriguez.

An ALJ must give a treating physician's opinion substantial weight, unless good cause is shown to disregard the opinion. *Hacia v. Comm'r of Soc. Sec.*, 601 F. App'x 783, 785 (11th Cir. 2015) (citing *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991)). Good cause exists where (1) the physician's opinion was not bolstered by the evidence, (2) the evidence supports a contrary finding; or (3) the physician's opinion was conclusory or inconsistent with his or her own medical records. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)). If an ALJ determines that the opinion of the treating physician is not entitled to substantial weight, he or she must clearly articulate the reasons for reaching that conclusion. *Id.*

In March of 2012, Dr. Jose Castro opined that Plaintiff possessed "marked" limitations in maintaining social functioning, suffered "frequent" deficiencies in his concentration, persistence, and pace, and experienced "repeated episodes of deterioration or decompensation in work or work-like settings" that caused Plaintiff to "withdraw from [those] situation[s] or [ ] experience exacerbation of signs and symptoms." [R. at 818]. Dr. Castro also opined that Plaintiff required at least six bathroom breaks per day, each lasting fifteen minutes in duration, and would need to be absent more than four workdays per month due to his impairments. *Id.* at 821-22, 825.

The ALJ did not commit legal error when choosing to give "little" weight to that opinion. ALJ Reynolds noted how the "marked" limitations found by Dr. Castro were not supported by the other evidence of record, highlighting medical evidence that contradicted the doctor's significant findings about Plaintiff's ability to function socially. *See Hacia*, 601 F. App'x at 785 (finding ALJ had good cause to discount treating physician's opinion when his conclusions were contradicted by treating notes and medical records); *Wind v. Barnhart*, 133 F. App'x 684, 691-93 (11th Cir. 2005) (affirming ALJ's decision not to give significant weight to treating physician's opinion deemed internally inconsistent and irreconcilable with other evidence). The substantial evidence supports this decision because, as the ALJ noted, the record contained evidence showing some semblance of an ability to function appropriately in social settings, including Plaintiff's own testimony about his ability to maintain intimate relationships and form friendships with people who helped him pay medical bills and frequently drove him to appointments with his doctors.[5]

The substantial evidence also supports the ALJ's decision with regard to Dr. Castro's findings concerning the physical limitations Morgan purportedly suffered as a result of his HIV condition. Dr. Castro opined that Plaintiff required at least six bathroom breaks per day; but as the ALJ noted, Dr. Castro's opinion also includes his noting that Plaintiff has responded "well" to treatment, that no courses of treatment

---

[5]     The ALJ gave "some" weight to the exertional, postural, and manipulative limitations discussed in Dr. Castro's opinion because, while the records reflected periods of fatigue and weakness during Morgan's course of treatment, those records also showed Morgan regularly exhibiting full strength, complete range of motion, and a normal, intact gait.

had been discontinued because of side effects or ineffectiveness, and that Morgan did not require additional limitations on his level of activity despite the claimed severity of his gastrointestinal distress. [R. at 818, 820]. And as the ALJ later points out, the record fails to show that Plaintiff received treatment to the level expected of one who suffered gastrointestinal issues to the extent Morgan claims, such as hospitalization or rehydration due to loss of fluids. *Id*. at 470. This evidence undercuts Morgan's claims about how severe the effects of the condition may really be, and more than supports the ALJ's decision to give something less than controlling weight to Dr. Castro's opinion.

We are likewise unable to find legal error with the ALJ's analysis as to the opinions offered by Dr. Illa-Sanchez. The opinion at issue contained several findings indicating Plaintiff lacked the ability to function normally in a work setting. Specifically, Dr. Sanchez found that Plaintiff could not appropriately accept supervision, showed signs of an exacerbation of his symptoms and conditions, deteriorated from a standard level of functioning, exhibited poor attendance and superficial or inappropriate interaction with peers, could not cope with schedules and expressed difficulties adopting to changes in demands. *Id*. at 802. Dr. Sanchez also opined that Plaintiff could not communicate effectively, show consideration for others, or interact and participate in group activities; and showed signs of serious limitations in his ability to relate to co-workers, deal with the public, maintain

attention or concentration, or behave in an emotionally stable manner. *Id.* at 803-804.[6]

The ALJ gave little weight to this opinion because she determined it was inconsistent with the record evidence as a whole. ALJ Reynolds pointed to various records that undermined the severity of the limitations Dr. Sanchez claimed Plaintiff suffered, including those where Morgan showed signs of normal mood and affect, logical thought processes, fair judgment and insight, and intact concentration. This supplied her with good cause to give something less than substantial weight to the doctor's findings. *See Good v. Astrue*, 240 F. App'x 399, 403 (11th Cir. 2007) (good cause existed for rejecting treating physician's opinion when contradicted by other evidence of record and remained inconsistent with physician's own notes); *Fries v. Comm'r of Soc. Sec. Admin.*, 196 F. App'x 827, 833-34 (11th Cir. 2006) (ALJ had good cause for giving minimal weight to physician's opinion where original opinion was inconsistent with other evidence, including opinions of other physicians and applicant's own description of her daily activities).

The substantial evidence also supports this decision. The record shows that Plaintiff certainly suffers limitations with regard to his social functioning, as well as in other areas of his life, due to the medical conditions he complains of here. But Dr. Sanchez's severe findings are undermined by Plaintiff's own testimony, where he

---

[6]     Additional severe findings contained within Dr. Sanchez's record included her opinion that Morgan would be unable to appropriately accept supervision; would withdraw from difficult situations; would continue to deteriorate from his current level of functioning; often engaged in superficial or inappropriate interaction with peers; remained unable to cope with schedules; would make poor decisions; and could not adopt to changing demands or context. [R. at 802].

admitted an ability to maintain certain friendships, attend appointments, shop for groceries, dress and groom himself, concentrate on certain tasks, and re-certify his housing. Sanchez's conclusions are also undermined by notations made in her own opinion, where she found no limitations in Morgan's ability to maintain personal hygiene, cook and clean, use public transportation, or participate in activities independent of supervision. [R. at 800].

Next, we move to Dr. Regina Carney. In a psychiatric and psychological evaluation conducted on June 2, 2012, Dr. Carney found Plaintiff to have suffered repeated episodes of deterioration or decompensation in work-like settings, with these episodes lasting an extended duration. *Id.* at 833. Dr. Carney also opined that Plaintiff displayed signs of a deterioration in his level of functioning, engaged in superficial or inappropriate interactions with his peers, and was unable to adapt to changing demands or context. *Id.* In addition to these findings, Dr. Carney indicated Morgan possessed serious limitations in his ability to use judgment, deal with work stress, maintain attention and concentration, or otherwise behave in an emotionally stable manner. *Id.* at 834-35.

The ALJ did not err in finding good cause to give little weight to Dr. Carney's opinion. As she discussed in her decision, ALJ Reynolds found the significant limitations stated in the evaluation to be inconsistent with the other evidence of record, including several treatment notes where Morgan exhibited a "euthymic mood, normal affect, fair judgment and insight, intact concentration and memory, [and a] denial of memory loss." *Id.* at 469. The ALJ also noted improvement over time in the

18

management of Plaintiff's symptoms, including the stabilization of his depressive condition. The ALJ supported such findings with extensive citation to the records used to reach this conclusion. *Id*. at 466; *cf. Poplardo v. Astrue*, 2008 WL 68593, at *11 (M.D. Fla. Jan. 4, 2008) (ALJ failed to clearly articulate the reasons for rejecting treating physician's opinion due to inconsistencies in the record when the ALJ failed to substantiate this finding by reference to specific evidence). And as we discussed above, the substantial evidence supports this decision, as the record contains significant support that contradicts Dr. Castro's findings.[7]

The same can be said for Dr. Vicki-Ann Samuel. On May 15, 2013, Dr. Samuel completed a psychiatric and psychological evaluation concerning Plaintiff's claimed mental impairments. [R. at 1358-70]. She found Morgan exhibited "moderate" restrictions in communicating clearly and effectively, and had difficulties getting along with friends, neighbors and family. *Id*. at 1360. Dr. Samuel opined that Morgan had "marked" restrictions in avoiding altercations and interacting in a group setting, finding that he lacked the ability to hold a steady job. *Id*. The evaluation also includes findings that Plaintiff had difficulties maintaining concentration and understanding, remembering and carrying out complex job instructions. *Id*. at 1362.

---

[7]    Contrary to Plaintiff's contention in his papers, the ALJ did not give "little" weight to Dr. Carney's opinion *solely* because it had been based on a single examination, although that did play a role her decision. *See* R. at 469 ("At the outset, this was a singular evaluation, not a treating relationship," which "significantly erodes the value of the opinion regarding his current functioning."). The ALJ based her decision on a combination of factors, including the singular nature of the treating relationship, the inconsistencies with the other record evidence, and the citations to medical documentation that seemingly undermined Dr. Carney's significant findings. *See id*. at 467 (citing to Exhibits D5F/11, 30; D7F/29; D11F/79; D22F/5).

The ALJ gave "little" weight to Dr. Samuel's opinion because it involved "a singular interaction, and [was] not the result of a treatment relationship." *Id.* 468. There is nothing erroneous in such a finding because, as a one-time examiner, Dr. Samuel's opinions "are not entitled to deference." *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Even if it were, ALJ Reynolds further determined that the majority of the examination revolved around Plaintiff's subjective complaints, and that the severity of the findings included in the evaluation were undermined by the objective evidence of record. *Id.* This provided the ALJ "good cause" to give something less than controlling weight to the Dr. Samuel's findings. *See Borges v. Comm'r of Soc. Sec.*, 771 F. App'x 878, 880 (11th Cir. 2019) ("After reviewing [claimant's] medical records and other record evidence, the ALJ articulated several reasons for discounting the opinions [at issue], including that those opinions were not supported by diagnostic findings or consistent with the record as a whole.").

Finally, the ALJ correctly decided that the "opinion" offered by Dr. Leidybeth Rodriguez was not entitled to any weight. [R. at 468-69]. Dr. Rodriguez completed a medical questionnaire on June 23, 2016, indicating Plaintiff suffered from a recurrent, major depressive disorder. *Id.* at 2221. But under the regulations, medical opinions "are statements from acceptable medical sources that reflect judgments about the nature and severity" of a claimant's impairments, including the individual's "symptoms, diagnosis and prognosis, what [the claimant] can still do despite [the] impairment(s), and [any] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Dr. Rodriguez's questionnaire does not provide any meaningful discussion on the

functional limitations experienced by Plaintiff as a result of his mental impairments – which the regulations require – and so her findings were not entitled to any deferential treatment. *Id.* Dr. Rodriguez's report also included her notation that Plaintiff retained the ability to function independently outside his home, which is consistent with the other evidence of record and further supports the ALJ's decision to give no weight to Rodriguez's findings. *Id.* at 469.

### D.   *Whether the ALJ Erred in Making Her Step Three Finding*

Next, we must determine whether the ALJ erred in finding that Plaintiff did not meet or medically equal Listings 12.04 and 14.08. We find that she did not.

The version of Listing 12.04 in effect at the time of Plaintiff's application reads as follows:

> 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> ...
>
> B. [The condition results] in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychological support, and one of the following:

> 1. Repeated episodes of decompensation, each of extended duration; or

> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensation; or

> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04 (effective May 24, 2016 to Sept.

28, 2016). With regard to Paragraph C, the regulations provide further guidance on

what constitutes "episodes of decompensation" and state the following:

> Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two).

> …

> The term repeated episodes of decompensation, each of extended duration in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

*Id.* at § 12.00C(4).

22

The ALJ found that Plaintiff did not meet the Paragraph B criteria because his condition caused only "mild" restrictions in his activities of daily living, and "moderate" difficulties in his social functioning and his ability to maintain concentration, persistence or pace. [R. at 463]. The ALJ further determined that Plaintiff had not suffered any episodes of decompensation, and so she found that – in addition to the Paragraph B criteria – Plaintiff could not satisfy his burden in establishing that he met or medically equaled Listing 12.04 under Paragraph C. *Id.* at 463-64.

These findings are supported by the substantial evidence. With regard to the Paragraph B criteria, the evidence supports the ALJ's conclusion that Morgan only suffered from "mild" limitations in his activities of daily living. Plaintiff testified that he could care and groom for himself, function independently when necessary, re-certify his living situation, pay his bills, attend his medical appointments, and engage in activities outside the home despite his mental condition. All of these facts support a finding that Plaintiff only suffered from "mild" limitations in this area of functioning.

The substantial evidence also supports the ALJ's decision concerning her findings that Plaintiff possesses "moderate" difficulties in his ability to function socially and maintain concentration, persistence and pace. While the record certainly shows limitations in each of these two areas – a fact that the ALJ acknowledges when analyzing Plaintiff's residual functional capacity later in her written decision[8] – there

---

[8]     *See* R. at 466, 468-470.

23

is also evidence and testimony that shows Morgan's limitations in these two domains are not quite so severe as he claims. This evidence includes records showing Plaintiff's ability to maintain friendships of such a nature that those friends offered to help him with bills and transport him to medical appointments, as well as participate in an intimate relationship after his diagnosis. The record also includes instances when Plaintiff presented to medical appointments and consistently displayed intact concentration, normal mood and affect, logical thought processes, normal eye contact and cooperative behavior. [R. at 466-67].[9] This evidence supported the ALJ's findings of fact, and we must defer to those findings and resist the urge to re-weigh the evidence before us. *See Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982); *Martin*, 894 F.2d at 1529.

The ALJ also found Plaintiff had not experienced episodes of decompensation, articulating that the record showed "no indication that a minimal increase in mental demands, or change in environment[ ] would be predicted to cause decompensation," and that Morgan failed to establish "an inability to function outside a highly supportive living arrangement." [R. at 464]. This finding is also supported by substantial evidence in light of the records highlighted by the ALJ later in her decision, including those from Dr. Castro noting generally normal clinical findings and showing Morgan responding well to treatment. This, in addition to Plaintiff's testimony that he could care for himself, see to his living arrangements, and be out

---

[9]     Evidence also shows Morgan at several instances denying suicidal ideation, memory loss, sleep pattern changes, changes in eating habits, anxiety, or altered mental status. [R. at 467 (citing to record evidence showing same)].

in public (albeit with a certain level of discomfort) supports the ALJ's Paragraph B and C determination on decompensation. *Id.* at 352-53, 466.

Morgan nevertheless challenges the decompensation finding because, in his words, it involved the ALJ ignoring medical records confirming Plaintiff's history of withdrawal, instances where he missed medical appointments, and times where he suffered an increase in depressive symptoms during periods of "exacerbated stress." [D.E. 26, p. 22]. But, as the Commissioner points out, "exacerbated stress" does not equate to "episodes of decompensation," and Morgan fails to indicate how the records he highlights illustrate or prove that he experienced "episodes of decompensation" as that term is defined in the regulations. Instead, Plaintiff merely relies on general, conclusory statements about what those records show, but such statements cannot, standing alone, establish that he experienced decompensation of sufficient severity to support his claim he suffered from a condition found in the Listings. *See Anderson v. Schweiker*, 651 F.2d 306, 308 (5th Cir. 1981) ("[T]he claimant bears the burden of proving that he is disabled within the meaning of the Social Security Act.").

The same holds true for the ALJ's determination as to her findings about Morgan's condition under Listing 14.08, which pertains to immune system disorders. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.00 (effective May 24, 2016 to Sept. 28, 2016). Morgan, who proceeds under Listing 14.08K, must establish he suffers from certain manifestations of his HIV condition, in addition to a "marked" limitation in his (1) activities of daily living; (2) maintaining social functioning; or (3) completing

tasks in a timely manner as a result of deficient concentration, persistence or pace. *Id*. at § 14.08K.

As we found above, the ALJ's decision to find Plaintiff only suffered "mild" or "moderate" limitations in these three categories is supported by the substantial evidence, and as such, he cannot show his HIV condition qualifies as a listed impairment under 14.08. Although Plaintiff contends the ALJ also erred because she failed to address his long-term manifestations of symptoms related to his condition, any such failure would be deemed harmless error by the fact that he failed to show he suffered from "marked" limitations in the three categories of functioning found also required by Listing 14.08K. *Whitten v. Social Sec. Admin., Comm'r*, 778 F. App'x 791, 793 (11th Cir. 2019) ("If the ALJ commits an error that does not affect the outcome, [it is] harmless and [does not] require reversal or remand."). Accordingly, remand on this basis alone would be a "wasteful corrective exercise," and the ALJ's decision on this front should still be affirmed. *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) (quoting *Ware v. Schweiker*, 651 F.2d 408, 412-13 (5th Cir. 1981)).

The large majority of Plaintiff's remaining arguments on this point involve the many instances in which he claims his doctor's records show he suffers from the marked limitations necessary to demonstrate his conditions meet or medically-equal the Listings. [D.E. 26, pp. 20-22]. But as we found earlier, the ALJ appropriately rejected those opinions, or treated them with something less than substantial weight. Since we cannot disturb findings that are supported by substantial evidence, and we

have already found that the substantial evidence supports the ALJ's treatment of the relevant treating physician's medical opinions, we must reject Morgan's argument concerning those records here.

### E.   _Whether the Hypothetical Question Posed to the VE was Improper_

We likewise find unpersuasive Plaintiff's fifth and final argument, which involves his contention that the ALJ's hypothetical question to the vocational expert is not supported by the substantial evidence. At the fifth step of the sequential framework that must be utilized by the ALJ, the Commissioner bears the burden of showing that, in light of the claimant's residual functional capacity and other factors, "there is other work available in significant numbers in the national economy that the claimant is able to perform." _Raymond v. Social Security Admin., Comm'r_, 778 F. App'x 766, 777 (11th Cir. 2019) (quoting _Jones v. Apfel_, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ may make this determination by posing hypothetical questions to a vocational expert. _Id_. "In order for a [vocational expert's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." _Jones_, 190 F.3d at 1229. An ALJ is not required to include findings in the hypothetical that the ALJ properly rejects as unsupported. _Crawford v. Comm'r of Sec. Sec._, 363 F.3d 1155, 1161 (11th Cir. 2004).

Plaintiff argues that the hypothetical posed to the VE failed to include _all_ the limitations and symptoms he experiences as a result of his conditions. This includes Dr. Castro's statements that Morgan would miss more than four days of work per month as a result of his mental impairments and would need to use the bathroom on

several occasions throughout the day because of the gastrointestinal side effects associated with the medications he takes for HIV. As we discussed above, however, the ALJ properly rejected Dr. Castro's opinion on this point, and the law requires that the hypothetical posed to the VE "need only include the claimant's *impairments*, not *each and every symptom* of the claimant." *Ingram*, 496 F.3d at 1270 (emphasis added). The ALJ did just that, including only those conditions she had not properly discounted as unsupported by the record, which we have already found to be in line with the substantial evidence.

Accordingly, "the hypothetical on which the ALJ relied encompassed all the limitations she claim [Plaintiff] faces," and so "the ALJ did not err in relying on the hypothetical she posed." *Raymond*, 778 F. App'x at 777.

## IV.  CONCLUSION

For all these reasons, we **RECOMMEND** that Plaintiff's Motion for Summary Judgment be **DENIED**, the Commissioner's Motion be **GRANTED**, and the ALJ's decision in the administrative proceedings below be **AFFIRMED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the Honorable Judge Robert N. Scola. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir.

Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 31st day of October, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge